UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**ERRICKA CAREY**,                                             Case No. 3:12-cv-01509-KI

                   Plaintiff,              OPINION AND ORDER

     v.

**CAROLYN W. COLVIN, Acting**
**Commissioner of Social Security**,

                Defendant.


     Linda S. Ziskin
     PO Box 753833
     Las Vegas, NV 89136

            Attorney for Plaintiff


     S. Amanda Marshall
     United States Attorney
     District of Oregon

Page 1 - OPINION AND ORDER

Adrian L. Brown
Assistant United States Attorney
1000 SW Third Ave., Suite 600
Portland, OR 97201-2902

Franco L. Becia
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104-7075

      Attorneys for Defendant

KING, Judge:

Plaintiff Erricka Carey brings this action pursuant to section 205(g) of the Social Security

Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner denying plaintiff's application for a period of disability and disability insurance

benefits ("DIB").   I reverse the decision of the Commissioner and remand for further

proceedings.

## BACKGROUND

Carey filed an application for DIB on June 1, 2010, alleging disability beginning April 30,

2007.  The application was denied initially and upon reconsideration.  After a timely request for a

hearing, Carey, represented by counsel, appeared and testified before an Administrative Law

Judge ("ALJ") on December 1, 2011.

On December 12, 2011, the ALJ issued a decision finding Carey was not disabled within

the meaning of the Act and therefore not entitled to benefits.  This decision became the final

decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ on June 22, 2012.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability.  The evaluation is carried out by the ALJ.  The claimant has the burden of proof on the first four steps.  Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012); 20 C.F.R. §§ 404.1520 and 416.920.  First, the ALJ determines whether the claimant is engaged in "substantial gainful activity."  20 C.F.R.

Page 3 - OPINION AND ORDER

§§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Molina, 674 F.3d at 1110. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(g) and 416.920(g).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards.  Molina, 674 F.3d at 1110.  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance. Id. (internal quotation omitted).  The court must uphold the ALJ's findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations.  Id.

## THE ALJ'S DECISION

The ALJ identified migraine headaches, depression, anxiety, obesity and chronic lumbar sprain as Carey's severe impairments.  The ALJ found these impairments, either singly or in combination, do not meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  Carey can perform sedentary work, with the added ability of standing and walking up to four hours in an eight-hour day, rather than just two.  She can lift and carry ten pounds frequently and twenty pounds occasionally.  She has non-exertional limitations preventing her from climbing ladders, ropes, or scaffolds, but she can occasionally climb ramps and stairs, and can balance, stoop, kneel, crouch, crawl and reach overhead.  She needs to sit and stand at will, approximately every 45 minutes.  She should avoid concentrated exposure to hazards.  She is limited to unskilled work and routine tasks involving only superficial interaction with the general public and co-workers with no close cooperation or coordination.

Given this residual functional capacity ("RFC"), the ALJ concluded Carey could not perform her past work as a barista, child care provider, cashier, store laborer, retail manager, or a weather officer. However, based on the testimony of a vocational expert ("VE"), the ALJ found Carey could perform work as a small products assembler, electronics worker, and office helper.

## FACTS

Carey was 32 years old on the alleged disability onset date of April 30, 2007. She has a bachelor's degree and is a veteran, having served in the Air Force from 2000 to 2007. During those years, she was a weather officer, with duty stations in Mississippi, New Mexico and Alabama. While she was in officer's training in Missouri in 2003, she was in a vehicle accident in which she was rear-ended while at a complete stop and pushed into a car in front of hers. She did not work for one or two months while she recovered from the crash. She then served in Iraq as a weather officer on base for six months. After the car accident, Carey began experiencing lower back pain. She received chiropractic treatments and traction, which helped. She was honorably discharged in 2007 "due to her injuries" when the "military started doing cutbacks." Tr. 261. Carey receives benefits from the Department of Veterans Affairs for a combined service connected rating of 80 percent, with a 100 percent payment rate as a result of a finding that she is unemployable due to these service-connected disabilities. She spends her days reading, playing computer games, dusting and picking up the house, and watching and sometimes caring for the farm animals on her five acre lot. When she has a headache, she lies down in a dark room for several hours. She cooks simple meals and eats about five times a day.

An MRI of her spine in July of 2008 showed no bulging discs, no significant arthritis, and no narrowing around the spinal cord or nerves. One of the doctors at the VA announced,

"Overall, very good news that no serious problems or anything requiring surgery [was] found."
Tr. 514.  Carey informed a VA Compensation and Pension evaluator that she has not been able to
work because of her neck pain and headaches, but did not mention her back.  She also told him
she was unable to get a job because she told prospective employers about her ongoing headaches
and neck pain.  Tr. 519.

In 2009, Michelle Huggins, PA-C, examined Carey.  Carey reported going to a few
interviews for management-type jobs, but not returning for the second interview due to migraine
headaches.  Huggins described Carey as obese, at 5 feet 10 inches tall and weighing 235 pounds.
She opined Carey could work in management, so long as she was provided with periods of sitting
and standing and moving about.  In 2010, Emad Aboujaoude examined Carey and diagnosed
chronic lumbar spine strain, affected by her weight (266 pounds at the time) and being "greatly
deconditioned."  Tr. 621.  At that time, Carey reported being able to sit for thirty minutes, stand
for 15 to 20 minutes, and walk for 15 minutes at a time.

Carey's headaches also began after the car accident as a result of neck tension.  She took
topiramate while in Iraq, which significantly reduced her headaches, but she had word-finding
problems and stopped taking it after she left the service.  In June of 2008, she complained of
headaches once a week that induced nausea and a 10/10 pain level, lasting from two to 48 hours.
The VA's staff neurologist, Dr. Morad Daniel, opined her ongoing frequent use of analgesics
could be causing rebound headaches.  In 2010, Carey told Dr. Daniel her headaches had
increased in frequency; she was experiencing one to two severe migraines a week and two to
three milder headaches which resolved after a few hours.  An MRI in April of 2010 showed no
abnormalities.  Dr. Daniel believed a strong association existed between her headaches and neck

tension; he recommended regular exercise, weaning off coffee and stopping her use of Excedrin/vicodin.

Carey received treatment at the NW Pain Clinic in 2009 for her low back pain.  Mental Health and Anesthesiology staff opined Carey was "deconditioned with somatic focus and unable to make lifestyle changes to improve pain management."  Tr. 343.  Carey reported being able to shop for two hours; if she shopped longer she had to take pain medications and pays for it the next day.  She reported drinking alcohol four to five times a week, four drinks at a time.  The examiner commented that "[b]ehavioral issues appear to be a major problem to recovery from pain in this veteran."  Tr. 348.

Daniela Hugelshofer, Ph.D., counseled Carey for approximately a year, beginning in February 2009.  Carey's mood waxed and waned, at times hopeful and discussing the termination of therapy, and at times tearful with suicidal ideation.  At the fourteenth session, Dr. Hugelshofer opined that Carey's depressive symptoms, which are secondary to her chronic pain limitations, would "likely make it difficult for her to obtain and maintain gainful employment, particularly in combination with her pain condition."  Tr. 395.  She also repeated Carey's comment that Carey attempts to smile through the pain, contrary to other providers' opinions that Carey exhibited a somatic focus, and opined Carey may actually give the impression of greater functionality.

The VA provider who assessed Carey's mental health functioning believed Carey's problems were physical rather than psychological.  Carey's counselor of four months, Jenna Wilson, LCSW, opined Carey's mood disorder caused marked difficulties in social functioning and marked deficiencies in concentration, persistence or pace.

Page 8 - OPINION AND ORDER

**DISCUSSION**

I.    <u>Step Two Finding:  Severity of Post Traumatic Stress Disorder</u>

Carey objects to the ALJ's step two finding in failing to consider her Post Traumatic
Stress Disorder ("PTSD") a severe impairment.  The ALJ mentioned Carey had a "positive
screen" for PTSD on one occasion, in April of 2008, "with some PTSD symptoms[,]" but failed
to come to a conclusion about whether PTSD constituted a severe impairment.  Tr. 28.

As an initial matter, I question whether the screen would justify identifying PTSD as a
"severe impairment."  Carey had negative screens on multiple other occasions and denied PTSD
on at least one occasion.  See Tr. 383-84 (2/26/10), 403 (12/15/09), 732 (10/18/10), 808
(7/20/11) (negative screens); Tr. 452 (4/2/09) (denied PTSD).

In any event, Carey fails to identify any additional or different functional limitations
associated with her PTSD, as opposed to her depression or anxiety.  Since the ALJ accounted for
Carey's anxiety and depression in crafting the RFC, such as limiting her to unskilled work,
routine tasks, and only superficial contact with the public and co-workers, and since Carey offers
no additional limitations associated with her alleged PTSD, I find any failure of the ALJ to
expressly address whether PTSD is a severe impairment is harmless error.  <u>Lewis v. Astrue</u>, 498
F.3d 909, 911 (9th Cir. 2007).  Additionally, since the ALJ evaluated Carey's mental impairments
under the listings, and since Carey does not identify any different outcome as a result of her
alleged PTSD, there is no prejudice to Carey if the ALJ did err.  <u>See</u> <u>Burch v. Barnhart</u>, 400 F.3d
676, 682 (9th Cir. 2005) (claimant bears the burden of proving an impairment meets or equals a
listing); <u>cf.</u> <u>Keyser v. Comm'r of Soc. Sec.</u>, 648 F.3d 721, 726-26 (9th Cir. 2011) (ALJ erred in

finding no severe impairments and in not completing a psychiatric review technique form or an equivalent analysis).

II.   VA Disability Rating

The ALJ was required to address the VA disability rating.  He did so in the following fashion:

> The claimant is a Gulf War veteran who served from March 15, 2000 through April 30, 2007.  On May 1, 2007, the claimant received a 10 percent disability rating for her chronic lumbar spine strain, which was increased to 40 percent on February 27, 2009.  On March 5, 2010, the claimant's chronic lumbar strain disability was decreased to 20 percent effective June 1, 2010.  The claimant remained 100 percent unemployable, however, according to the VA. The claimant also has a 50 percent service connected disability for headaches assessed on May 1, 2007.  In addition, the claimant has a 10 percent disability for dysthymia associated with mixed tension and migraine headaches.  The condition was assessed on May 2, 2009.  The claimant's disability rating was increased to 30 percent on June 10, 2009.  The claimant's combined disability rating was assessed as 60 percent on May 1, 2007, that increased to 80 percent on February 27, 2009. The undersigned gives substantial weight to the conclusions of the Department of Veteran Affairs.  The Social Security Administration must ordinarily give great weight to a VA determination of disability, as there are marked similarities between the two agencies' disability programs.  The VA's determination of the claimant's overall disability rating of 80 percent, however, is not inconsistent with the undersigned's assessment of limitations and noted residual functional capacity.  Partial and even full VA disability ratings do not necessarily result in findings the claimant is totally unable to work.

Tr. 27-28.

A VA disability rating is entitled to great evidentiary weight in a Social Security proceeding.  McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002).  Since the VA and SSA criteria for determining disability are not identical, an ALJ may give less weight to a VA rating decision by giving persuasive, specific, and valid reasons for doing so that are supported by the record.  Id.; Valentine v. Comm'r of Soc. Sec., 574 F.3d 685, 694 (9th Cir. 2009)

("properly justified reevaluation of old evidence constitutes a persuasive, specific, and valid reason").

I agree with Carey that the ALJ was disingenuous in saying he gave "great weight" or "substantial weight" to the VA's disability rating. Although, as I note below, the RFC certainly accounted for Carey's back pain, he did not explicitly explain how the RFC accounted for her other infirmities and he did not address the VA's 100 percent unemployability determination. The individual unemployability determination means the VA has concluded "the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities." 38 C.F.R. § 4.16(a); see Vera v. Colvin, No. CV 12-7078-SS, 2013 WL 6144771, at *20 (C.D. Cal. Nov. 21, 2013) (explaining VA rating system and commenting on its similarity to social security). Additionally, in other cases in which the ALJ has given great weight to the VA determination, courts have concluded a disability rating of 80 percent entitles the claimant to an award of disability benefits. See McCartey, 298 F.3d at 1076 (depression and lower back injury); Wheatley v. Astrue, 2012 WL 1194306, at *2 (D. Or. Apr. 10, 2012) (80% disability rating). As a result, the ALJ's assertion that he was giving "great weight" to the VA's determinations is contradictory to his finding that Carey could work.

Nevertheless, there may be reasons to question the VA's disability rating and unemployability determination here. The VA apparently based its unemployability determination in part on Dr. Hanaway's[1] letter, which is not in the record. The ALJ should have obtained that letter and evaluated the grounds for the doctor's opinion, given in April 2008, that Carey could not work in her "present state" due to her back pain. Tr. 368. Notably, the VA itself recognized

---

[1]Also referred to as Dr. Hannity by one examiner. Tr. 368.

a different assessment of Carey's back condition in November 2009 that, "The patient's skills are in management, and do not require any sort of manual labor.  From that standpoint, she should be able to do some sort of occupation that does not require any manual labor, lifting, pulling, pushing."  Tr. 370, 863.  The ALJ implicitly recognized this statement in assigning an RFC for sedentary level work with the ability to sit and stand at will.  Finally, the VA's disability rating with respect to her back has changed from ten percent disabling (in 2007) to 40 percent disabling (in 2009) to 20 percent disabling (in 2010) without affecting its overall unemployability determination.  See also Tr. 28 (ALJ limited Carey to sedentary work "giving weight to VA's findings of a notable, albeit lessening, service-connected" lumbar pain).

In support of its unemployability finding, the VA also relied entirely on a single January 12, 2010 note from Dr. Daniela Hugelshofer, Ph.D., that Carey's depression "would likely make it difficult for her to obtain and maintain gainful employment, particularly in combination with her pain condition."  Tr. 395, 863.  The ALJ simply did not discuss this opinion, but the ALJ did cite evidence from the record that Carey's mental condition had waxed and waned, that she had never been hospitalized for her mental functioning, and that Maryann Price, a licensed clinical psychologist, evaluated Carey and concluded her primary problems were physical and that she was experiencing "mild additional impairment in occupational functioning and psychosocial functioning due to depression."  Tr. 439.  Finally, the VA did not cite any medical opinions about the effect of Carey's migraines on her ability to work.

In sum, because the ALJ asserted he was giving substantial weight to the VA's conclusions, but failed to explain how an unemployability rating of 100 percent was consistent

Page 12 - OPINION AND ORDER

with his finding that Carey could work and failed to explain how the RFC was otherwise

consistent with the disability rating, the ALJ erred in his treatment of the VA's decisions.

III.    <u>Medical Evidence</u>

Carey complains the ALJ failed to discuss Dr. Hanaway's opinion that she was incapable

of working, failed to discuss a similar opinion of Dr. Hugelshofer, and incorrectly rejected the

opinion of Carey's mental health counselor, Jenna Wilson.

The weight given to the opinion of a physician depends on whether the physician is a

treating physician, an examining physician, or a nonexamining physician.  More weight is given

to the opinion of a treating physician because the person has a greater opportunity to know and

observe the patient as an individual.  <u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007).  If a

treating or examining physician's opinion is not contradicted by another physician, the ALJ may

only reject it for clear and convincing reasons.  <u>Id.</u> (treating physician); <u>Widmark v. Barnhart</u>,

454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician).  Even if it is contradicted by another

physician, the ALJ may not reject the opinion without providing specific and legitimate reasons

supported by substantial evidence in the record.  <u>Orn</u>, 495 F.3d at 632; <u>Widmark</u>, 454 F.3d at

1066.  The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial

evidence to reject the opinion of a treating or examining physician.  <u>Widmark</u>, 454 F.3d at 1066

n.2.

As Carey points out, the ALJ completely neglected to discuss Dr. Hanaway's opinion that

Carey was incapable of working as a result of her back condition.  The VA decision relied on Dr.

Hanaway's letter describing Carey as permanently and totally disabled from the motor vehicle

crash in coming to its unemployability determination.  The letter itself is not in the record, but the

opinion appears to be referenced in Physician Assistant Michelle Huggins' treatment notes as follows:

> There is a letter from Dr. Hannity[2] that has been flagged and reviewed, and in his impression, it states that, "The patient's motor vehicle accident was definitely the direct cause of the present low back pain for which she states she had no previous problem that impaired her work. The patient's back pain has caused her disability. She is permanently and totally disabled. Now she is not going to be able to work in her present state.

Tr. 368.

While I agree with the Commissioner that it is within the ALJ's bailiwick to resolve conflicts in the medical testimony, it is impossible for the ALJ to complete this task if he does not have the actual opinion to assess. The VA referenced the opinion, relying on it to some extent, and it was the ALJ's obligation to seek the letter out in order to have a complete record. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (a Social Security ALJ has an "independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered"). I cannot conclude the ALJ "inferentially" rejected Dr. Hanaway's opinion, as the Commissioner asks me to do, when the full opinion is not in the record at all. Given its central importance to the VA's decision, the ALJ should have attempted to obtain the letter.

As for the ALJ's treatment of Dr. Hugelshofer's opinion, the Commissioner contends the ALJ need only discuss the evidence that is significant and probative to the issues presented. Dr. Hugelshofer opined:

> It is this provider's clinical opinion that the severity of [Carey's] depressive symptoms (which are deemed secondary to her chronic pain condition and its

---

[2]Although Huggins refers to the doctor as Dr. Hannity, rather than Hanaway, the language she quotes is almost identical to the language quoted by the VA in its unemployability determination.

limitations) would likely make it difficult for her to obtain and maintain gainful
employment, particularly in combination with her pain condition.

Tr. 395.  In the Commissioner's view, Dr. Hugelshofer's opinion that Carey may "likely" have

trouble maintaining employment is irrelevant to Carey's impairment.  Again, I disagree with the

Commissioner.  The VA specifically referenced Dr. Hugelshofer's opinion that Carey's

depression would affect her employability.  The ALJ was required to give great weight to the

VA's conclusions unless he had persuasive, specific and valid reasons to reject them; in order to

give legally viable reasons, the ALJ must address the opinion on which the VA relied.

Accordingly, Dr. Hugelshofer's opinion was probative of the issues presented and the ALJ's

failure to discuss it is error.

   However, contrary to Carey's contention, the ALJ properly rejected the opinion of

Carey's mental health counselor, Jenna Wilson, who opined Carey's prognosis was poor due to

the combination of her physical pain and depressive/suicidal ideation symptoms.  Tr. 878.  The

ALJ rejected her opinion because she is not an acceptable medical source and because she based

her opinion primarily on Carey's subjective complaints.

   As an initial matter, the fact that Wilson is not considered an acceptable medical source is

not alone a sufficient reason to reject her opinion with respect to the severity of Carey's

impairments.  20 C.F.R. §§ 404.1513(d), 416.913(d) (other sources may be considered when

evaluating severity of impairments).  However, the ALJ also rejected Wilson's opinion because it

was based on Carey's subjective complaints.  This is a sufficient reason to give little weight to

Wilson's conclusions.[3]  Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (physician's

---

   [3]Carey did not challenge the ALJ's decision that her alleged inability to work was not
                           (continued...)

opinion of disability may be rejected if it is "based to a large extent on a claimant's self-reports that have been properly discounted as incredible").  Indeed, Wilson's treatment relationship was quite short–only four months–and only two treatment notes are present in the record.  The first is from July and the second is from August, when Wilson came to her conclusions about Carey's limitations on November 28.  Additionally, no objective findings support Wilson's opinion about any reductions in Carey's concentration, persistence or pace–something which easily can be tested.  Indeed, as the ALJ noted in a different section of his opinion, Carey herself did not identify any problems with her memory, completing tasks, concentrating, understanding, or following instructions.  Tr. 215.  The ALJ did not err in his treatment of Wilson's opinion.

IV.    Residual Functional Capacity

Carey contends the ALJ neglected to consider her limitation on pace as opined by Wilson.  Residual functional capacity ("RFC") "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," meaning eight hours a day, five days a week, or equivalent.  SSR 96-8p.  RFC is the most a person can do in spite of limitations or restrictions.  Id.  "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."  Id.

Since I have already concluded the ALJ's rejection of Wilson's opinion is supported by substantial evidence in the record, the ALJ did not err.  An ALJ is not required to incorporate

_____

[3](...continued)
credible.  Tr. 25.

limitations that are not supported by substantial evidence.  Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001).

V.    Lay Witness Testimony

Carey offered statements from three lay witnesses:  her partner, Apryle Van Winkle; her mother, Linda Carey; and her friend, Cheri Barnett.  The ALJ addressed each statement, but Carey challenges his analysis.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness. Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006).  The ALJ discussed the testimony of Van Winkle, Carey's life partner and friend of ten years.  Van Winkle explained that before the car accident, Carey liked to hike, bike, camp and fish, but now Carey's pain and depression made it difficult for her to get out of the bathtub, vacuum, do the laundry, or handle crowds.  She also noted Carey's migraines would necessitate cancelled social outings, and Van Winkle would give Carey injections for severe headaches that knocked her out for days.  The ALJ gave

> [t]his statement . . . moderate weight as to the claimant's daily activities. However, it has been given little weight as to the claimant's alleged limitations and capabilities.  Ms. Van Winkle lacks the expertise objectively to evaluate the claimant's medical conditions.  Instead, the statements regarding what the claimant is capable of doing are based on the claimant's subjective pain complaints and statements regarding the alleged symptoms and limitations.

Tr. 29-30.  While I agree with Carey that the ALJ's comment about Van Winkle's lack of medical expertise is not a germane reason to reject her testimony, the Commissioner points out the ALJ also dismissed Van Winkle's statement on the basis that she repeated Carey's

Page 17 - OPINION AND ORDER

complaints, which the ALJ had earlier rejected.  This is a germane reason to reject at least a portion of Van Winkle's testimony,  Valentine, 574 F.3d at 694, but it does not account for Van Winkle's own observations.  The ALJ should have assessed whether the RFC was consistent with Van Winkle's observations.

The ALJ also discussed the letter written by Carey's mother, who described Carey as someone debilitated by migraine headaches and pain, who cannot tolerate crowds or walking long distances.  While giving the statement some weight, the ALJ commented on the extent to which it relied on Carey's complaints and that many of the limitations are accounted for in the RFC.  These are germane reasons to give little weight to this statement.  Id.

Finally, the ALJ summarized Cheri Barnett's statement, a friend of Carey's for 21 years. Barnett conceded she hardly sees Carey, speaking on the phone once every several months, but that Carey visited for two weeks.  During that period, Barnett watched Carey having trouble walking and saw her with migraines.  The ALJ gave little weight to Barnett's statement since she admitted seeing and talking with Carey rarely, suggesting her opinion was based largely on Carey's complaints.  This is a germane reason for rejecting lay witness testimony.  Id.

VI.    Side Effects of Medications

Carey argues the ALJ failed to consider the side effects of her medications.  Carey cites only her own testimony, and the statement of Van Winkle, in support of her medication side effects.  Since the ALJ found Carey not credible, a finding Carey does not challenge here, and since Van Winkle's testimony on the subject was based on Carey's reports, his rejection is supported by substantial evidence in the record.

VII.    Remedy

  The court has the discretion to remand the case for additional evidence and findings or to award benefits. McCartey, 298 F.3d at 1076-77. The court's decision generally turns on the utility of further proceedings. Harman v. Apfel, 211 F.3d 1172, 1178-79 (9th Cir. 2000). In making this decision, the court considers the following three factors: whether the ALJ provided legally sufficient reasons for rejecting the evidence, whether there are issues to be resolved before a determination of disability can be made, and whether it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited. Id.

  Since "[t]he ALJ is not compelled to adopt the conclusions of the VA's decisions wholesale," and where there are possible persuasive, specific and valid reasons to discount the VA's determinations, a remand for further proceedings is appropriate. Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) (remand ordered when ALJ improperly addressed a VA opinion and failed to consider the opinion of a treating physician). Additionally, a remand is appropriate when the ALJ failed to properly address a doctor's opinion but the record might contain sufficient reasons. Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990). Here, the ALJ failed to evaluate the opinions of two treating physicians in this otherwise lengthy medical record. He may have legally sufficient reasons he could explain on remand. He should also reassess Van Winkle's observations about Carey's limitations.


///

///


Page 19 - OPINION AND ORDER

## CONCLUSION

The decision of the Commissioner is reversed.  This action is remanded to the

Commissioner under sentence four of 42 U.S.C. § 405(g) for rehearing to further develop the

record as explained above.  Judgment will be entered.

IT IS SO ORDERED.

DATED this ____12th____ day of December, 2013.


                                         /s/ Garr M. King                           
                                        Garr M. King
                                        United States District Judge